GRACE EDGECUMBE ET ALS. v. THE CITY OF BURLINGTON, DAN LYON, HENRY H. DOOLITTLE, AND MINER B. CATLIN.

[IN CHANCERY.]

*Sequestration of Land for Public Burial-Grounds. Gen. Sts. ch. 18, § 9. Acts of 1868, No. 91.*

When land is set out and sequestered under § 9, ch. 18 of the Gen. Sts., for the establishment or enlargement of public burial-grounds, payment of the damages awarded the land-owner, within the ten days therein limited, is not a condition precedent, and indispensable to the validity of the proceeding; and the omission to pay or tender such damages within that time, does not render the proceeding void.

The act of incorporation of the Green Mountain Cemetery Association, authorized the city of Burlington to transfer and convey to said association the public cemetery in said city known as the Green Mountain Cemetery, in trust, to support, embellish, and manage the same. Subsequently said city duly set out and sequestered certain of the orators' land, for the purpose of enlarging said cemetery, and with a view of transferring and conveying said cemetery, thus enlarged, to said association, in pursuance of said act, which it accordingly did. *Held*, that such enlargement did not destroy the identity of said cemetery, and that said act authorized the conveyance thereof as enlarged, to said association, and that the view with which said enlargement was made, did not render the proceeding invalid.

APPEAL from the court of chancery, Chittenden county. The orators were the widow and children of George Edgecumbe, late of Burlington, deceased, and claimed title to the land in question as devisees, under the will of the said Edgecumbe. The bill alleged,

that on the 21st of September, 1869, the city of Burlington, through its board of aldermen, set out and sequestered from the lands of the orators, for the pretended purpose of enlarging the public burial-ground in said Burlington known as Green Mountain Cemetery, the lands particularly described in the proceedings of said city, a copy of which was annexed to the will and made a part thereof, and that said proceedings were recorded on the 23d of said September ; that said board of aldermen awarded the orators for the land thus sequestered, the sum of fifteen hundred dollars damages ; that there was no public necessity requiring such enlargement, and that such setting out and sequestering were made at the instigation and suggestion of a private corporation or of individuals, for its or their purposes, and not for the purposes of a public burial-ground for said city, and with an understanding on the part of the authorities of said city that any expense in that behalf, should be paid back to said city ; that the lands aforesaid were so sequestered and set out in fraud of the rights of the orators, and without any intention on the part of said city authorities of exercising permanent control of the same, and only for the purpose of quieting the title which said association or individuals could not otherwise acquire, and transferring said premises to it or them ; that the orators intended to have appealed from said proceedings, but by accident and mistake, were deprived of such appeal, and were in danger of losing said land, and their rights in the premises ; that no work had been done upon said land, and no possession taken thereof under said proceedings ; that no tender or payment of the damages awarded, was made to them, or any one of them, within the time limited by law for such tender or payment to be made by said city, or by any one in its behalf ; that the orators had applied to said city to vacate said proceedings, and leave the orators in undisturbed possession of said premises ; that said board of aldermen had instructed the cemetery commissioners, Dan Lyon, Henry H. Doolittle, and Miner B. Catlin, to take possession of said premises under said proceedings, and fit them for use for burial purposes, at the instigation, and upon the requests, of said association or the individuals aforesaid, against the wishes and protest of the orators ; that said sum

awarded as damages, was insufficient and inadequate, and that said land was worth a much larger sum than the amount of said damages, as would be made to appear, if an impartial hearing could be had.

Prayer, that said city and association be enjoined from taking possession of said premises by virtue of said proceedings of sequestration; that the title of the orators to said premises be confirmed; and for general relief.

The answer of said city admitted the sequestration of said land, and that the proceedings in relation thereto were recorded as alleged, but alleged that the public good and necessity required the enlargement of said cemetery for burial purposes; denied that said sequestration was made for the purposes of a private corporation, or of individuals, but alleged that it was for the purposes of a public burial-ground; admitted the orators' title as alleged, and that said sequestration was made with an understanding on the part of the city authorities, that any expense incurred therein by the city, should be reimbursed; insisted that the damage awarded the orators, was an adequate compensation for said land, and that the orators were precluded from any further showing in the matter, by their neglect to appeal from said award; averred that on the 15th of December, 1869, and before entry upon said land, said city tendered to the said Grace Edgecumbe, executrix of the last will of the said George Edgecumbe, for the use of the orators as devisees as aforesaid and owners of said land, the sum of fifteen hundred dollars, the amount of said award, with eighteen dollars interest thereon from the 3d of October, 1869, which the said Grace refused to receive; averred that said sequestration was made with an understanding on the part of said city, that the control of said cemetery should thereafter be conveyed to the Green Mountain Cemetery Association of Burlington, a corporation duly established by an act of the legislature approved November 19, 1868, and held by said association for the purpose of public burial; that, in pursuance of said understanding, an indenture was executed by and between the city and said association, on the 5th day of November, 1870, whereby the city conveyed said cemetery to said association, upon the express trust and confidence that

said association and its successors should, at its and their own expense, and without charge or expense to said city, support and manage said cemetery for the purposes of a public burial-ground, and keep and maintain the same at all times in a suitable and proper condition in every respect for that purpose, and in the use, occupation, and management thereof, conform to all the general laws of the state applicable thereto, and to the provisions of said act of the legislature; and whereby said association, for itself and its successors, covenanted and agreed to take possession of said cemetery, and control and manage the same upon the trusts and conditions aforesaid, and upon the breach of any thereof, to yield up and surrender said cemetery, and the management and control thereof, to said city. Said answer further averred, that on the first day of June, 1871, said association entered upon said land, and took possession of said cemetery as enlarged, and expended large sums of money in fitting the same for public burial, and had ever since had possession thereof; alleged that the city never instructed the cemetery commissioners to take possession of said land, and fit the same for burial purposes; insisted that the orators were not entitled to relief in the premises, and prayed the same benefit of said defence as though a demurrer had been filed to said bill. The answer of the other defendants was substantially like that of the city. The answers were traversed. It was stipulated that the case be heard on bill and answer, and that the court hear and determine all questions raised by the pleadings, although it might appear that the orators, or some of them, had a remedy at law. The court of chancery, at the April term, 1872, dismissed the bill; from which decree the orators appealed.

*L. B. Englesby* and *Paul Dillingham*, for the orators.

The proceedings of sequestration were had under the special provisions of ch. 18, § 9, of the Gen. Sts.

We insist that the board of aldermen did not follow the requirements of the statute, in that, after proceeding so far as to condemn the land, and award damages to the orators, they did not pay the sum awarded; and after recording their proceedings, they failed to pay or tender to the orators the sum awarded to them

for nearly three months, while the statute thus provides : " They shall, at the time of making their award of damages, or within ten days after the recording of such returns, and before entering upon such lands, pay or tender to such owner or owners the amount of damages so awarded." This provision is specific, emphatic, and vital to the full protection of the land owner. It is not directory simply, but mandatory. Without payment or tender of the damages awarded, the owner could not learn whether the award was made, or at what time, only by an indefinite period of watching the town clerk's office. Every provision that is favorable to the land owner's interest, even if otherwise doubtful, shall be solved in his favor. Sparrow v. Oxford, 12 Eng. L. & Eq. 249 ; Shelf. Rail. 233.

This attempted sequestration of the orators' land, was a proceeding in invitum. Selectmen of towns and aldermen of cities, have no general powers to seque: ter lands ; it is conferred by special statute, that specifically provides for every step they take, and all the provisions of the statute must be strictly if not literally followed, and are all precedent, and must be thus strictly complied with, before any title passes from the land owner. Spear, admr. v. Ditty, 9 Vt. 282 ; Bellows v. Elliott et al. 12 Vt. 569 : Isaacs, admr. v. Wiley et al., 12 Vt 677. If the provisions of the statute in like cases are all performed but the last, and that fails of performance, all are void. Hall v. Hall, 5 Vt. 305. Those acting under authority of special statute provisions as to their course, must pursue that course exactly. Thatcher v. Powell, 6 Wheat. 119 ; Blackwell Tax Titles, 53, 54. True, there is this further provision in the same section, that if there is no tender or payment within the time, the land owner may sue and recover the sum · awarded. This is a provision made solely for the benefit of the land owner. If he elects to sue and recover the money, this cures defects in sequestration, and would estop his questioning them thereafter. But if he does not choose to do this, the parties stand as if no provision of the kind had been enacted.

We think that the board of aldermen, under the circumstances of this case, exceeded their authority, and did what the statute never intended should be done. They did not in fact—whatever

the form indicates—take the land for the city of Burlington. Indeed, the city had no interest in what was done. It paid nothing towards the land, and was not to do so. The Green Mountain Cemetery Association was to pay the damages, when awarded, and did furnish the money, and was to have the use and benefit of the land transferred to it. All improvements were to be made by it, and there was nothing but the chicanery of legal forms that prevented its appearing of record that the sequestration was made for its benefit, and at its expense, past and future. Had the return when recorded, shown the facts now admitted in the answer, there could have been no claim that the title had passed from the orators. What the city of Burlington could not have done directly, it could not do by indirection. The attempt to do it was a fraud upon the orators, and vitiates the whole proceeding. The act incorporating the Green Mountain Cemetery Association does not empower the city to convey this addition. The intent and meaning of the act are plain—the corporation to acquire by gift or purchase the addition; the city to convey the original plot. The act under which the conveyance was made, ignores the idea of a public necessity within the intent of the Gen. Sts. Acts of 1868, p. 111, §§ 2, 3.

Again, the city cannot convey what it does not possess. The cemetery is a public one, and as such, does not belong to the city, to be the subject of conveyance, but to the public, to each and every citizen, according to his need, when the exigency arises requiring its use. *Pomeroy* v. *Mills*, 3 Vt. 279.

*R. H. Start* and *E. J. Phelps*, for the defendants.

I. The sequestration proceedings were not avoided by the omission to make tender of the damages awarded, within ten days after return. The language of sections 9 and 10 of the statute (ch. 18), is to be taken together, and plainly shows that the provision on the subject is this—the damages *must* be tendered before entry on the land; and if not tendered within ten days after the recording of the return, the land owner may sue for and recover them, though no entry has been made. By giving a right of action for the damages awarded, the legislature must have intended that

the acts preceding payment or tender, if regular, divested the owner of title, else he could not maintain an action to recover the damages awarded. *Stacy* v. *Vt. Central R. R. Co.*, 27 Vt. 39. The construction claimed by the orators is wholly unnecessary to the security of the land owner; rests upon no conceivable reason; and makes section 10 an absurd surplusage.

II. The objection that the land was not taken for a public burial-ground, is without foundation. The case stands upon bill and answer. Both the answers, on this and all points strictly responsive to the bill, allege that the land was sequestered by the board of aldermen by statute proceedings, for the purpose of a public burial-ground; that the public good and necessity required it to be so taken; and deny that it was taken for the benefit of any private corporation or individuals. That the decision of such authorities is conclusive as to the existence and extent of the public necessity, has repeatedly been held. *Lincoln* v. *Rutland & Burlington R. R. Co.* 24 Vt. 639; *Hill* v. *Western Vermont R. R. Co.* 32 Vt. 68; Acts of 1865, p. 197.

The *subsequent* agreement with the cemetery association, is a conveyance of the control of the cemetery, upon the express trust and undertaking that it shall be maintained at all times for the purposes of a public burial-ground only, in conformity with all statute provisions on the subject. And upon default in this, the control at once reverts to the city. This is a mere arrangement, and a very judicious one, for the better care and embellishment of the cemetery. The city had a perfect right to make it. It contravenes no provision of law, and has been expressly authorized by statute. Acts of 1868, No. 9; Cooley Const. Lim. 530, *et seq*; Angell Highways, § 86.

But even if it were void, the burial-ground, with its contents, would not revert to the original land owner. The title would, in that event, still remain in the city, which would continue to be charged, notwithstanding the agreement, with the maintenance of the ground for burial purposes.

The opinion of the court was delivered by

BARRETT, J. The case has been argued mainly, 1st, on the question whether, in order to render the proceeding valid and

effectual for sequestering the land, it was indispensable that the land damage should have been paid or tendered within ten days after the recording of the return. The statute makes provision that before the land is taken, the owner shall have the damage that has been awarded, and that, unless it be paid within ten days after the recording of the proceedings, the land-owner may sue for and recover the same of the town. Whether the damage is or is not paid within said ten days, the owner is sure of having it paid before his land is taken; and if not paid within the ten days, he is sure of getting his pay for it by his suit, whether the land should or should not be actually taken and used by force of the proceeding to sequester. So in any event, the constitutional provision as to compensation for property taken for public use, is rendered effectual for the behoof of the land-owner. Indeed, this is not controverted in the argument—the only ground of objection to the validity of the proceeding in this respect being, that by the terms of the statute, the damages should be paid within the ten days, in order to render the proceeding valid and effectual.

The provision in the statute for suit and recovery if not paid within said ten days, would seem to indicate that it was contemplated that the proceeding might be valid, or, at any rate, not void, even if the damage awarded should not be paid within that time. If it had been supposed that the proceeding would become null in case of failure to pay within that time, it is hard to believe that provision would have been made for recovery of pay for the land which, by the assumption, was to be entirely unaffected by the proceeding—which was to continue to be the absolute property of the owner—with no diminution of right in himself, and no accession of right in it, or in respect to it, to the town. The argument, *ab inconvenienti*, raised from the fact that there is no provision in the law for notice to be given of the time of filing the proceedings for record, to the intent that the land-owner may be certain of his time for taking appeal, seems to have very little force as bearing on the construction and meaning of the statute as to time for making payment of the damages awarded.

30

There is a similar lack of provision in this respect in the matter of appeals from the allowance of commissioners on claims under the probate law. But it is sufficient to say that there is practically very little inconvenience to arise in this behalf. The town clerk's office is always easily accessible, and ordinarily it would be entirely feasible to arrange with the clerk himself to apprise the party of the fact of the proceedings being filed for record. And moreover, this matter in this instance is so much within the scope and reason of the law and rule as to such a record operating notice as to all matters required by law to. be recorded, that the omission of the legislature to make special provision for notice of the record to be made in this case, is not entitled to have weight as against the plain terms and legitimate implications of the express provisions of the statute in question. We hold, then, that the payment within ten days as claimed, is not a condition precedent and indispensable to the validity of the proceeding, and so, that the omission to pay or tender the damage within that time, does not render the proceeding *null*.

2d. It is claimed that the proceeding should be held to be invalid and ineffectual, for the reason that it was taken and prosecuted with the view of transferring the cemetery to the association formed under the act of incorporation in 1868. That act authorized the transfer in trust of the public cemetery in Burlington known as the Green Mountain Cemetery, to that association. There is no limitation of time for the making. of such transfer. There is no other designation of the subject-matter of such transfer than that above given. The general statute authorizing the enlargement of public burial-grounds, was then, and has continued to be, in force. Such enlargement of Green Mountain Cemetery would not destroy the identity, but only increase the size, of that cemetery ; and if such enlargement was legitimately made, the authority conferred by the act of 1868 would be as effectual for the conveyance of said cemetery enlarged, as for the conveyance of it without enlargement. The proceeding for such enlargement, as shown by the record, is conceded to be conformable to the provisions of the statute in that behalf.

Did the existence of the purpose of making such transfer to

said association, render the proceeding null? Certainly not, unless such transfer was to and would result in withholding the land so taken from its legitimate use as a public burial-ground. The same purpose is to be served by the transfer of the enlarged cemetery as by the cemetery if not enlarged—and the same reason exists for conferring, and for exercising the authority to transfer the cemetery enlarged, as to transfer it not enlarged. This being so, it is seen by the deed of transfer, that the conveyance is made upon the *express trust* and confidence, that the association shall, at their own expense, support and manage said cemetery for the purposes of a public burial-ground only, conformably to all the laws of the state applicable thereto, and to the provisions of the act of 1868,—with a provision for surrender and reverter to the city upon breach of the trust in any respect. It is thus seen that the city has not parted with its title, but only farmed out the management of the cemetery to the same uses and to the same intents and purposes as it might be devoted to by the city if it had not made such transfer. If it would not be unlawful and improper for the city authorities to do what is contemplated to be done and may lawfully be done by the association, then it would be difficult to assign a reasonable objection to the needful enlargement of the cemetery, with a view to the transfer of it, under the act of 1868, to the association, after thus enlarged. It could be no fraud on the law, on the public, or on the land-owners.

Decree dismissing the bill is affirmed.